IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFREY JOEL JUDY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB 10-607 |
| ARCADE L.P., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant Arcade L.P. ("Arcade") moves to dismiss the pending action brought by Plaintiffs Jeffrey Joel Judy ("Judy") and Gilroy J. Daniels ("Daniels") (collectively, "Plaintiffs") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Arcade's Motions to Dismiss (ECF Nos. 5 & 12) are GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Lexington Market is a historic market located in downtown Baltimore, Maryland, which sells fish, produce, and baked goods, among other things. Plaintiffs allege Defendant Arcade leases or operates Lexington Market, and therefore bring this action against Arcade. Am. Compl. ¶ 6 (ECF No. 6). Plaintiffs claim that they are qualified individuals with a disability under the ADA and have "experienced serious difficulty accessing the goods and utilizing the

1

services" at the market due to its "architectural barriers." *Id.* ¶ 14. Specifically, Plaintiffs contend that Lexington Market has inaccessible entrances, inaccessible ramps with "excessive slopes" that lack handrails, and inaccessible restrooms with "high urinals." *Id.* ¶ 18. Plaintiffs bring this action to correct the various barriers to access they allege exist at the market.

Plaintiff Judy is a North Fort Myers, Florida resident and asserts that he is a qualified individual with a disability under the ADA as a result of his mobility impairment. *Id.* ¶¶ 3, 4. Though Judy lives in Florida, he grew up in Baltimore and "enjoys traveling to Baltimore to visit relatives, including his sister, who resides near [Arcade's] property." *Id.* ¶ 3. Judy last visited Lexington Market on February 4, 2010, and claims that he planned to return sometime in December 2010. *Id.* ¶ 15.

Plaintiff Daniels is a Pasadena, Maryland resident and lives "near" Lexington Market. Am. Compl. 6. He also asserts that he is a qualified individual with a disability because of his mobility impairment. *Id.* ¶ 7. Daniels alleges that he visits Lexington Market on a regular basis, and will continue to do so in the future. *Id.* ¶ 16.

Both Judy and Daniels assert that "independent of their intent to return as a patron to the stores located on the Property, Plaintiffs additionally intend to return to the Property as ADA testers to determine whether the barriers . . . have been remedied." *Id.* ¶ 21.

On March 10, 2010, Judy filed the original Complaint as the sole plaintiff in this case. ECF No. 1. On July 23, 2010, Arcade moved to dismiss the Complaint for lack of jurisdiction and failure to state a cause of action. ECF. No. 5. On August 9, 2010, Judy filed an Amended Complaint, which added Daniels as a party. ECF No. 6. On August 27, 2010, Arcade moved to dismiss the Amended Complaint for lack of jurisdiction. ECF No. 12.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

3

plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

ANALYSIS

In order to establish standing, a plaintiff must allege: (1) a concrete, particularized injury; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Arcade argues that Plaintiffs lack standing to bring this action because the allegations, even accepted as true, do not establish the first two prongs of this test.

**I.    Concrete, Particularized Injury**

To satisfy the "concrete, particularized injury" prong of the standing test, a plaintiff must demonstrate a "real or immediate threat" that he will be wronged again by the defendant. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991). As the Southern District of Ohio explained in a nearly identical case also brought by Plaintiff Judy,[1] to demonstrate a real or immediate threat of future harm an ADA plaintiff must establish a likelihood of returning to the defendant's business. *Judy v. Pingue*, No. 08-859, 2009 WL 4261389, at *2 (S.D. Ohio Nov. 25, 2009); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 830, 832 (D. Md. 1998) (finding that an ADA plaintiff "does not have standing . .

---

[1] Judy has brought forty-nine federal ADA lawsuits over the last five years in Ohio, Georgia, Florida and Maryland. Daniels has joined in two of Judy's ADA suits in Maryland. *See* discussion *infra* Part I.E.

4

. if he cannot demonstrate a likelihood that he himself will suffer future harm at the hands of the defendant."). When determining an ADA plaintiff's likelihood of returning to defendant's facility and whether it is sufficient to confer standing, courts consider: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Id.* (citing *D'lil v. Stardust Vacation Club,* No. 00-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec.21, 2001)). In addition, some courts consider a plaintiff's litigation history when considering whether a plaintiff has standing. *See* discussion *infra* Part I.E.

### A. Proximity

The first factor this Court must consider in determining whether Plaintiffs have standing to bring this suit is whether the proximity of Lexington Market to Plaintiffs' residences make it likely that they will return. As the distance between a plaintiff's residence and the public accommodation increases, the likelihood of future harm decreases. *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005). A number of courts have held that a distance of more than 100 miles between a defendant's business and a plaintiff's residence weighs against finding a reasonable likelihood of future harm. *See, e.g.*, *Judy*, 2009 WL 4261389, at *3 ("The plaintiff's distance from the defendant's place of business becomes especially significant when it is more than 100 miles."); *Molski*, 385 F. Supp. 2d at 1045 ("When the distance between the [plaintiff's residence and defendant's business] is significant, especially if it is in excess of 100 miles, courts have consistently held that it weighs against finding a reasonable likelihood of future harm."); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (finding plaintiff failed to establish likelihood of future harm in part

because he lived 280 miles from hotel); *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995) (finding plaintiff failed to establish likelihood of future harm where she had moved to a different state than defendant doctor).

Judy resides in North Fort Myers, Florida. Thus, he lives more than 1,000 miles from Baltimore, where Lexington Market is located. This distance makes it less likely that Judy will return to Lexington Market. Daniels, on the other hand, resides in Maryland, and lives only twenty miles from Lexington Market. Thus, this factor weighs in favor of finding that Daniels will return to Lexington Market.

Notably, Judy claims that Lexington Market's status as a tourist attraction renders the proximity element irrelevant as to him. Judy cites no case law in support of this argument, however. Even assuming that Lexington Market is a tourist attraction and that the proximity element is not pertinent when analyzing a tourist's likelihood of returning to a tourist attraction, Judy does not assert that he comes to Maryland for the purpose of visiting Lexington Market as a tourist. Instead, Judy claims only that he travels to Baltimore to visit his relatives, and that his sister lives nearby Lexington Market.

### B. Past Patronage

The second factor is whether Plaintiffs' past patronage of Lexington Market makes it likely that they will return. Plaintiffs generally allege that they "have visited" Lexington Market. Am. Compl. ¶ 13. Judy only specifies one prior date that he visited Lexington Market. *Id.* ¶ 15. These allegations are not sufficient to demonstrate that Judy's past patronage weighs in favor of finding a reasonable likelihood that he will return to the market. *See, e.g.*, *Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1122 (S.D. Cal. 2006) ("Assuming, arguendo, that Plaintiff has visited the [Defendant] Costco twice before, this patronage to the store does not

indicate that he has standing to sue."); *Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.*, Civ. No. 05-1307, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) (finding that plaintiff's alleged past injury, which was suffered during a single visit to defendant's hotel, did not bolster plaintiff's standing argument).

Unlike Judy, Daniels does not identify any dates that he has previously visited the market. Instead, Daniels vaguely contends that he "regularly visits" the market. Am. Compl. ¶ 16. Daniels's failure to provide dates for any earlier visits to Lexington Market casts doubt on whether he will patronize the shopping center in the future. *Brown v. Grand Island Mall Holdings, Ltd.*, Civ. No. 09-3086, 2010 WL 489531, at *4 (D. Neb. Feb. 8, 2010). Thus, Daniels's assertion that he "regularly visits" Lexington Market is not sufficient to demonstrate a reasonable likelihood that he will return. *Disabled Patriots of Am. v. City of Trenton*, No. 07-3165, 2008 WL 4416459 at * 5 (D. N.J. Sept. 24, 2008) ("Unless the plaintiff can demonstrate a specific connection to the establishment, lack of past patronage negates a possibility of future injury.").

### C. Definitiveness of Plans to Return

The third factor is the definitiveness of Plaintiffs' plans to return. As mentioned above, Daniels generally contends that he "regularly visits the property" and that he "intends to continue to visit [Lexington Market] in the future for his shopping needs." Am. Compl. ¶ 16. This assertion does not state the "requisite concrete and specific intent to return" required to show standing. *Access for America, Inc. v. Associated Out-Door Clubs, Inc.*, 188 Fed. Appx. 818, 819 (11th Cir. 2006); *Steger v. Franco, Inc*., 228 F.3d 889, 893 (8th Cir. 2000) ("Intent to return to the place of injury 'some day' is insufficient."); *Brown v. Showboat Atl. City Propco, LLC*, 2010

U.S. Dist. LEXIS 133106, at *37 (D. N.J. Dec. 16, 2010) (holding that a plaintiff's "mere expressed desire" to return does not constitute or imply an intent to return).

Judy alleges that he intends to continue visiting Lexington Market in the future, and that he anticipated returning to the market "during his next visit to Baltimore in December 2010." Am. Compl. ¶¶ 15, 17. Given that Judy does not claim any specific interest in Lexington Market's products or services, though, this Court finds that this statement is insufficient to demonstrate a definite plan to return. *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (finding plaintiff's lack of past patronage at defendant wintery and demonstrated lack of preference for its goods and services weighs against the likelihood of future harm).

### D. Frequency of Travel Near Defendant

The final factor is whether the frequency of Plaintiffs' visits to Lexington Market indicates that is it likely that they will return. Judy does not claim to "frequently travel" to Baltimore, but only that he enjoys coming to Baltimore to visit with relatives. Am. Compl. ¶ 3. Though Daniels alleges that he "regularly visits" Lexington Market, he provides no clarification as to what "regularly" means in this case—whether he goes to the market once a year or once a week. These allegations do not establish either plaintiff's frequency of travel to the market.

### E. Number of Lawsuits Filed by Plaintiff

Courts disagree as to whether the litigation history of the Plaintiff is relevant when considering whether a plaintiff has standing. *Compare Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 948 (C.D. Cal. 2005) (finding that the filing of hundreds of lawsuits was not relevant to the standing determination at the initial pleading stage), *with Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368 (M.D. Fla. 2004) (finding that plaintiff's professed intent to return to the fifty-four properties he had sued implausible), *and Wilson v. Costco Wholesale*

*Corp.*, 426 F. Supp. 2d 1115, 1123 (S.D. Cal. 2006) (holding that plaintiff's litigation history was relevant—though not outcome determinative—where plaintiff filed over eighty prior lawsuits). Defendant has noted, and Plaintiffs have not refuted, that Judy has an extensive litigation history as a plaintiff in forty-nine federal ADA lawsuits over the last five years in Ohio, Georgia, Florida and Maryland. *See* Mot. to Dismiss at 10; Opp'n at 20. In each case, Judy contends that he will return to the defendant businesses. *Id*. Daniels has thus far joined in two of Judy's ADA suits in Maryland. *Judy & Daniels v. Arundel Mills, L.P. & Simon Property Group, L.P.*, No. 10-553 (D. Md. filed March 5, 2010); *Judy & Daniels v. Arundel Mills Marketplace, L.P.*, No. 10-527 (D. Md. filed March 3, 2010). In this action, as in those cases, Daniels was added as a party by an Amended Complaint after Defendant challenged Judy's standing. Though Plaintiffs' litigation history is not outcome determinative, it is relevant to this case and undermines Judy's and Daniel's already vague statements regarding their intentions of returning to Lexington Market.

Considering all of the relevant factors, this Court finds that Plaintiffs do not have standing to bring this suit because they are unlikely to return to Lexington Market and therefore have not demonstrated a real threat of future harm.

## II.     Imminent or Traceable Injury

Although this Court need not reach this prong of the standing analysis, this Court will consider whether or not Plaintiffs have shown an imminent or traceable injury. To satisfy the second prong of the standing test, a plaintiff must demonstrate that his injury is fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 561. Plaintiffs allege that Arcade is the "owner, lessee, and/or operator" of Lexington Market. Am. Compl. ¶ 9. Arcade has submitted an affidavit by its general partner, John M. Prugh, attesting that Arcade does not, in

9

fact, own, lease or operate Lexington Market. In response, Plaintiffs contend only that the building that houses Lexington Market also houses other properties at different addresses that Arcade admits to owning. Opp'n at 7. Given Arcade's affidavit, this argument is insufficient to show that Arcade is responsible in some way for the alleged architectural barriers. Accordingly, Plaintiffs cannot establish the second prong of the standing test—that the alleged injury is traceable to Arcade.[2]

### III. Plaintiffs' Allegation that they are ADA "Testers" Does Not Establish Standing

Plaintiffs' allegation that they intend to return to Lexington Market as ADA testers is insufficient to establish standing. Tester status is available to a plaintiff who meets the standing requirements, including having a concrete and particularized injury. *Havens realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982). In this case, as in *Judy v. Pingue*, 2009 WL 4261389, at *5 (S. D. Ohio 2009), "[a]ny tester status that Judy might possess does not confer standing to seek prospective relief where he cannot show a reasonable likelihood of returning to [defendant's] property." Accordingly, Plaintiffs' allegation that they will return to Lexington Market as testers does not save their deficient complaint.

### CONCLUSION

For the reasons stated above, Defendant Judy's Motions to Dismiss (ECF Nos. 5 & 12) is GRANTED.

A separate Order follows.

Dated: February 1, 2011 /s/_____
Richard D. Bennett
United States District Judge

---

[2] Since Plaintiffs have not established either a concrete, particularized injury or an imminent or traceable injury, this Court need not reach the issue of whether the alleged injury is likely to be redressed by a favorable decision.

10